**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

STEVE DURAND,
　　　　　　　*Plaintiff-Appellant,*

　　　　　v.

UNITED STATES DEPARTMENT OF
LABOR, and HILDA L. SOLIS,
Secretary of Labor
　　　　　　　*Defendant-Appellee.*

No. 10-36184

D.C. No.
CV-09-00178-RRB

OPINION

Appeal from the United States District Court
for the District of Alaska
Ralph R. Beistline, District Judge, Presiding

Argued and Submitted
October 11, 2011—Seattle, Washington

Filed November 17, 2011

Before: Alex Kozinski and Richard A. Paez, Circuit Judges,
and Larry A. Burns,* District Judge.

Opinion by Judge Burns

*The Honorable Larry A. Burns, United States District Judge for the Southern District of California, sitting by designation.

**COUNSEL**

Christopher J. Slottee (argued) and Richard E. Vollertsen, Atkinson, Conway & Gagnon, Inc., Anchorage, Alaska, for the plaintiff-appellant.

Thomas G. Giblin, United States Department of Labor (argued), Karen Loeffler, United States Attorney, District of Alaska, and Richard L. Pomeroy, Assistant United States Attorney, District of Alaska, for the defendant-appellee.

**OPINION**

BURNS, District Judge:

The Federal Employee Compensation Act, or FECA, provides disability benefits to federal employees who are injured on the job. But there's a catch. If a third party is responsible for the employee's injury, the Secretary of Labor can require the employee to bring a civil action against that third party. And if the employee obtains a judgment, he must refund to the United States any FECA benefits he received. The question in this appeal is whether the employee can deduct his litigation costs from that refund. We hold he cannot and affirm the district court's judgment.

## I.  Factual and Legal Background

Steve Durand was working for the Federal Aviation Administration when he was injured in a helicopter crash. He filed a FECA claim with the Department of Labor's Office of Workers' Compensation Programs and received benefits totaling $409,838.11.

The Secretary of Labor can require a FECA beneficiary whose injury was "caused under circumstances creating a legal liability on a person other than the United States to pay damages" to do one of the following:

> (1) assign to the United States any right of action he may have to enforce the liability or any right he may have to share in money or other property received in satisfaction of that liability; or

> (2) prosecute the action in his own name.

5 U.S.C. § 8131(a). Here, the Secretary chose the second option. Durand then filed a civil action against the helicopter operator, Era Aviation, in Alaska state court. He eventually settled his lawsuit for $2.3 million.

Durand's settlement with Era Aviation entitled the United States to a refund of the FECA benefits he received. 5 U.S.C. § 8132. Only two sentences in § 8132 matter here:

> If an injury or death for which compensation is payable . . . is caused under circumstances creating a legal liability in a person other than the United States to pay damages, and a beneficiary entitled to compensation from the United States for that injury or death receives money or other property in satisfaction of that liability as the result of suit or settlement by him or in his behalf, the beneficiary, after deducting therefrom the costs of suit and a reasonable attorney's fee, shall refund to the United States the amount of compensation paid by the United States and credit any surplus on future payments of compensation payable to him for the same injury.

> However, the beneficiary is entitled to retain, as a minimum, at least one-fifth of the net amount of the money or other property remaining after the

> expenses of a suit or settlement have been deducted; and in addition to this minimum and at the time of distribution, an amount equivalent to a reasonable attorney's fee proportionate to the refund to the United States.

5 U.S.C. § 8132. The basic idea is that, after deducting certain amounts from the total recovery, a FECA beneficiary must refund to the United States the benefits he received and credit any surplus toward future benefits.

Durand and the Secretary of Labor substantially agree on how the refund owed to the United States should be calculated under the statute. The starting point is the $2.3 million Durand received in settlement from Era Aviation. From that amount, the parties agree that $575,000 should be deducted to account for the portion of the settlement allocated to loss of consortium. *See* 20 C.F.R. § 10.711(a). Durand's costs and attorney's fees are also deductible. 5 U.S.C. § 8132. From the balance, Durand is permitted to deduct an additional 20 percent, which represents the "minimum" he is "entitled to retain" under the statute. *Id.* After making those deductions, $881,237.39 remains of Durand's $2.3 million settlement. This is his net recovery. It is also the amount to be considered for purposes of determining the refund Durand owes the United States *and* the surplus he must credit toward future benefits.

Because Durand's net recovery—$881,237.39—exceeds the amount he received in FECA benefits—$409,838.11—he must refund to the United States all the benefits he received and credit the surplus—$471,399.28—toward future benefits. The parties agree that Durand is entitled to retain "a reasonable attorney's fee proportionate to the refund to the United States" from the amount owed. 5 U.S.C. § 8132. Durand negotiated a 33.3 percent fee with his attorney, so the $409,838.11 he owes the United States is reduced by $136,476.09. In other words, the United States shares the

attorney's fees a FECA beneficiary incurs when he brings a civil action against a third party responsible for his injuries.

The dispute in this case is whether the United States must also, under § 8132, share the costs of Durand's lawsuit. Durand believes that he is entitled to deduct costs from the refund he owes, just like his attorney's fees. The Secretary of Labor, on the other hand, argues that § 8132 only allows for a deduction of costs from Durand's *gross recovery*—the $2.3 million amount—to determine whether Durand owes a total or partial refund of his FECA benefits and if there is a surplus that must be credited for future benefits. The Secretary maintains that under the plain language of § 8132, Durand is not entitled to deduct his costs a second time in calculating the refund amount.

## II.    Standard of Review

The issue here is one of statutory interpretation, and our review is de novo. *Arizona State Bd. for Charter Schools v. U.S. Dep't of Educ.*, 464 F.3d 1003, 1006 (9th Cir. 2006).

## III.    Discussion

**[1]** "Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Gross v. FBL Fin. Servs., Inc.*, 129 S. Ct. 2343 (2009) (internal quotations omitted). This first principle of statutory interpretation proves fatal to Durand's appeal. The text of § 8132 is clear. Durand is entitled to deduct the costs he incurred by suing Era Aviation from his gross recovery, but not from the refund he owes to the United States.

> If . . . a beneficiary entitled to compensation from the United States . . . receives money or other property . . . as the result of suit or settlement by him or in his behalf, the beneficiary, after deducting there-

> from the costs of suit and a reasonable attorney's fee,
> shall refund to the United States the amount of com-
> pensation paid by the United States . . . .

5 U.S.C. § 8132. The operative word is "therefrom." For
Durand's argument to succeed, there must be some ambiguity
in the text of the statute such that "therefrom" can be read to
apply to the $409,838.11 *refund amount* rather than the $2.3
million *settlement*. There is no ambiguity. The word "there-
from" plainly references the money a FECA beneficiary
receives "as the result of suit or settlement." It is from that
settlement amount—$2.3 million—that Durand must deduct
his litigation costs. The FECA scheme is therefore perfectly
clear: The Secretary of Labor can require a disabled FECA
beneficiary to bring a civil suit against a responsible third
party, but the United States is not required to foot the bill,
especially when, as here, the beneficiary comes out way
ahead.

In Durand's eyes this result is unfair because the Secretary
had the option of directly pursuing Era Aviation, in which
case Durand would not have incurred any litigation costs, and
the Secretary would have fully recovered her own costs. But
this overlooks two important considerations. First, federal
employees who are injured on the job by the negligence of a
third party aren't required to file a claim for benefits under
FECA in the first place. They are free to sue the tortfeasor on
their own and keep the proceeds of that action for themselves.
Second, § 8132 reflects an equitable judgment that Congress
was free to make. If a FECA beneficiary's recovery in a civil
action compelled by the Secretary of Labor pursuant to
§ 8131(a) is so meager that he recovers less than what he
received in FECA benefits, the United States will share his lit-
igation costs. If the beneficiary recovers far more than the
amount he received in benefits, he must cover his litigation
costs himself.

Durand is right that deducting his litigation costs from his
gross recovery only lessens the amount of the surplus, and

that he will only recover those costs if he exhausts that surplus and his FECA benefits resume. But Durand's equitable arguments that remedial statutes should be construed liberally in favor of their beneficiaries and that beneficiaries of a lawsuit shouldn't be enriched at the litigant's expense do not override the principle that the ordinary meaning of words in a statute controls.

## IV.   Conclusion

**[2]** No reading of 5 U.S.C. § 8132 allows for a FECA beneficiary to obtain a civil award and then deduct the costs of obtaining that award from a refund of benefits owed to the United States. The only plausible reading of § 8132 is to the contrary: A beneficiary may deduct his litigation costs only from his gross recovery to determine the amount, if any, of the surplus he must credit to the United States for future benefits.

**Affirmed**.